No. 51.—WILLIAM D. ROGERS *et al.* plaintiffs in error, *vs.* WILLIAM DOUGHERTY, defendant.

[I.] Legatees filed a bill against the executor for an account, &c. and for the appointment of a receiver. The bill stated a strong case of waste against the executor, but not a very strong case of danger to the fund. The executor resided within the jurisdiction. No notice of the bill was served on him. The Court appointed the receiver. Afterwards, the executor moved to revoke the appointment, on the ground, that he had not had notice of the bill. The Court granted the motion: *Held,* that the Court did right.

Motion in Equity. Muscogee. Decided by Judge WOR-RILL, in Chambers, 1856.

William D. Rogers and others, as legatees under the will of Henry Rogers, deceased, filed their bill against William Dougherty, as the executor of the last will and testament of the said Henry Rogers, deceased, alleging a waste and mal-administration of the estate which came to his hands, &c. and praying the appointment of a receiver, &c. The bill was sanctioned in the terms prayed for, and a peremptory order granted, in Chambers, requiring the defendant to deliver up the property to the receiver therein appointed.

Thereupon, the defendant moved a rule, calling on complainants to show cause, on a given day, why the peremptory order appointing a receiver should not be set aside, on the ground, that the same was granted without notice to defendant, or any opportunity of showing cause against the same.

At the time appointed, Counsel for complainants answered to the rule ; and after argument had, it was ordered by the Court, that said order appointing a receiver be revoked, vacated and set aside.

Counsel for complainants except thereto, and assign the same as error.

R. J. MOSES and JONES & JONES, for plaintiffs in error.

WILLIAM DOUGHERTY, for defendant.

Rogers *et al. vs.* Dougherty.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] The prayer of the bill in this case is, that a receiver may be appointed to take charge " of all the assets" of the estate of Henry Rogers, deceased, and particularly, the slaves mentioned in the bill. This prayer was sanctioned by the Court, and a receiver was appointed. Afterwards, the defendant in the bill, who was the main executor of Henry Rogers, moved to have the appointment of a receiver set aside, resting the motion on the ground, that the appointment had been made without notice to him. The Court granted the motion, and set aside the appointment.

The question is, was the Court right in doing this?

In such a case as that made by the bill, the Court of Ordinary has power to remove the executor, " or to pass such other or further order as said Court may think expedient and fit for the better managing and securing" the estate. (*Pr. Dig.* 246.) And that Court is the only Court upon which, as a Court of original jurisdiction, the Legislature has expressly conferred this power.

It does not appear by the bill, that any application was ever made to that Court, by the complainants in the bill, for the exercise of this power in their behalf. If the power has not been exercised, it has not been the Court, therefore, that has been to blame.

Nor does it appear by the bill, that that Court does not still retain undiminished confidence in Dougherty, its appointee as executor.

The order appointing the receiver set no limit to the duration of the appointment. It would, therefore, have made the receiver, virtually, the executor of the will of Henry Rogers.

In a word, if the order had gone into operation, the effect would have been, not merely to oust from his office for an indefinite period, an appointee of the Court of Ordinary, without consulting that Court, but also to oust that Court for an

indefinite period from the power of appointing to the office; and that, too, before the Court had given any evidence that it was a Court not safely to be trusted with the power. In respect to Henry Roger's will, the Court of Equity and its receiver would have taken the place of the Court of Ordinary and its executor. All of the assets would have passed out of the hands of the executor into those of the receiver.

Now if we admit that a Court of Equity has the power to pass an order, productive of such consequences as these, we are surely entitled to insist, that the Court shall not exercise the power, unless the demand for its exercise is exceedingly strong—unless the case which demands its exercise be such as to make it almost certain, that if the power be not exercised, the assets will be lost.

What, then, is the sort of case made by the bill?

That case is certainly a strong case of waste and misman-agement by the executor; but as a case of danger to the assets remaining in hand, it is what the following words make it:

"And as the said William Dougherty resides in the County of Muscogee, and keeps said negroes in the County of Wal-ker, convenient to the Alabama and Tennessee lines, and as your complainants have serious apprehensions that the said Dougherty will remove the same out of the State, and beyond the jurisdiction of the Courts of Georgia," &c. It is not said here, that Mr. Dougherty *threatens* to remove the negroes out of the State, or that he so acts with the negroes as to justify the belief, that he is about to remove them out of the State; much less is it said that he is actually removing them out of the State. All that is said is, that he "keeps" the negroes. at a place "convenient" to Alabama and Tennessee. But as to what is his purpose for keeping them there, nothing is said. Room, therefore, is left for the inference, that he may have some good reason for keeping them there, such as that that is a place where he has possessions of his own—possessions, perhaps, of long standing. And this is an inference the more

readily to be made ; as, from what appears in the bill, it is
to be presumed that he has, from the beginning, twenty years
ago, all the time kept the negroes at *some* place convenient
to one or both of these two States. Troup, Muscogee and
Walker are counties, of which the first two bound Alabama
and the last touches both Alabama and Tennessee ; and it
would appear that he has resided, during all that time, in
first one and then another of these, or some of these counties.

Is the mere naked fact, then, that he keeps the negroes at
a place convenient to the boundary line of Georgia, such a
fact as *ought* to raise " serious apprehensions" in the com-
plainants, that he will remove the negroes beyond that line ?

It is true, that it is also stated in the bill that the negroes
have been levied on to satisfy his private debt, and that the
complainants fear that the negroes will be brought to sale un-
der the levy. But the appointment of a receiver could not
prevent the negroes from being thus brought to sale ; for the
appointment would be in a suit to which the plaintiff in the
*fi. fa.* would not be a party, even if the danger of such a sale
would be a ground for the appointment of a receiver.

This is the case which the bill makes for the appointment
of a receiver. And this, certainly, is not a very strong case.
It is not, we think, a case sufficiently strong to justify the
appointment of a receiver, without a previous notice to the
person whose place the receiver would take.

" Strictly speaking," says *Daniel,* " a receiver can only be
appointed after answer; and it seems formerly to have been
held, that a receiver could not be granted before ; but the
rule was broken by Lord *Kenyon* in *Van vs. Barnett,* and
the order then made for a receiver before answer, has been
followed since, wherever justice has required it, and the merits
have appeared by affidavit." (3 *Danl. Ch. Pr.* 427.)

And the same author says, further: " It is to be observed,
however, that the general rule of the Court is, that a motion
for a receiver cannot be made, as for an injunction it may be,
without notice." " The rule, however, which requires previ-
ous notice to be served upon a defendant who has not ap-

peared, is subject to exception, where the defendant is resident out of the jurisdiction of the Court, and cannot be served." (*Id. Ibid.*)

Doubtless a case of *extreme* danger to the fund might also constitute an exception to the rule, although that case is not mentioned as an exception to it, by this author.

The case before us is not such a case ; nor is it a case in which the party against whom the receiver is to be appointed. is a non-resident.

And if the want of a notice of the application made the appointment wrong, it was, as a matter of course, the duty of the Court to annul the appointment, whenever requested in a proper manner to do so.

We therefore affirm the judgment of the Court.